IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CARY RUSSELL SOLMI,                         Civ. No. 6:15-cv-00033-AA

        Plaintiff,                              OPINION AND ORDER

    v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.

_____

Kathryn Tassinari
Mark A. Manning
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401
        Attorneys for plaintiff

Billy J. Williams
Acting United States Attorney
District of Oregon
Janice E. Hébert
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

1 – OPINION AND ORDER

David J. Burdett
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075
        Attorneys for defendant

AIKEN, Judge:

Cary Solmi (plaintiff) brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) and Social Security Income (SSI) benefits under the Act. The Commissioner's decision is affirmed and the case dismissed.

## PROCEDURAL BACKGROUND

On September 4, 2012, plaintiff protectively filed for a period of disability and DIB, and on January 6, 2014 plaintiff applied for SSI, alleging disability beginning June 30, 2012. Tr. 12.[1] His applications were initially denied on June 18, 2013 and upon reconsideration on December 13, 2013. Tr. 12, 106-10, 111-13. On September 22, 2014, a hearing was held before an Administrative Law Judge (ALJ), wherein plaintiff appeared with an attorney and testified. Tr. 30-72. A vocational expert (VE) also appeared and testified. Tr. 59-70. On October 23, 2014, the ALJ issued a decision finding plaintiff not disabled from June 30, 2012, through October 23, 2014, the date of the decision. Tr. 12-25. On November 12, 2014, the Appeals Council denied review, rendering the ALJ's decision final. Tr. 5-7. Plaintiff now seeks judicial review.

---

[1] Both plaintiff and defendant referenced different dates for plaintiff's DIB and SSI applications. Plaintiff's attorneys wrote that plaintiff filed for DIB on January 9, 2013, and SSI on January 22, 2014. Pl.'s Br. 2. Defendants wrote that plaintiff filed for DIB on December 10, 2012, and SSI on January 22, 2014. The Court defers to the ALJ's decision for the dates referenced in this opinion.

Plaintiff was fifty-one years old at the time of the hearing before the ALJ. Tr. 36. He received a high school diploma and attended community college, but he has not completed his degree. Tr. 61, 388. He worked as an Auto Repair Service Technician and a Service Manager, but was laid off from his job in June 2012. Tr. 21, 23, 37, 61-62. Plaintiff alleges disability as of June 30, 2012, due to his progressive mental disorder and numerous physical ailments, including chronic pain symptoms with his feet, back, and shoulders. Tr. 12, 38-40.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The Commissioner's findings are upheld if supported by inferences reasonably drawn from the record; if evidence exists to support more than one rational interpretation, the court must defer to the Commissioner's decision. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate

an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The ALJ evaluated plaintiff's allegation of disability pursuant to the relevant five-step sequential process. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date, June 30, 2012. Tr. 14; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the ALJ found that plaintiff had the severe impairments of a right shoulder fracture and bipolar disorder. Tr. 14; 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ found that plaintiff's physical impairments of arch pain, back pain, and a history of left shoulder impingement were nonsevere. Tr. 14-15.

At step three, the ALJ found that plaintiff's medically severe impairments did not meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude gainful activity. Tr. 15-17; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. Because plaintiff was not presumptively disabled at step three, the ALJ evaluated how plaintiff's impairments affected his ability to work by assessing his residual functional capacity (RFC). Tr. 17-23.

At step four, the ALJ found that plaintiff had the RFC to "perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)." Tr. 17. Specifically, the ALJ found that plaintiff is

> able to stand and/or walk for up to six hours during a normal eight hour workday, sit for up to six hours during an [sic] normal eight hour workday, but he is limited to lifting no more than ten pounds. He is further limited to no more than frequent stooping, crouching and kneeling, and to no more than occasional crawling or climbing of ropes, ladders and scaffolds. He would also be precluded from any overhead reaching on the right. He would need to avoid concentrated exposure to vibrations, fumes, dust, gases, poor ventilation and other noxious odors, as well as unprotected heights, moving machinery and

similar hazards. The [plaintiff] is also limited to simple, repetitive, routine tasks requiring no more than occasional interaction with co-workers, and no contact with the general public. Tr. 17.

Based on plaintiff's assessed RFC and the testimony of the VE, the ALJ found that plaintiff could not perform any of his past relevant work as an auto repair service technician or a service manager. Tr. 23-24; 20 C.F.R. §§ 404.1565, 416.965.

If the plaintiff is unable to perform any past relevant work, the inquiry proceeds to step five, where the Commissioner bears the burden to establish that the plaintiff is capable of performing other work that exists in significant numbers in the national economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f). Relying on the testimony of the VE, the ALJ found that plaintiff was able to perform other work as a label coding affixer, inspector packaging small products, and wafer cleaner. Tr. 24-25, 63-70. Therefore, the ALJ found that plaintiff was not disabled within the meaning of the Act.

## DISCUSSION

Plaintiff asserts that he should be found disabled as of his fiftieth birthday, the Commissioner's decision reversed, and the case remanded for immediate payment of benefits. Alternatively, plaintiff seeks remand for further proceedings. Pl.'s Br. 18. Plaintiff argues the ALJ erred by: (1) failing to give clear and convincing reasons to reject plaintiff's testimony; (2) failing to provide legally sufficient reasons for failing to credit the lay witness testimony; and (3) failing to show the Commissioner met her burden of proving that plaintiff retains the capacity to perform other work in the national economy. Pl.'s Br. 11-17.

A.    Credibility Determination

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discrediting his testimony. Pl.'s Br. 11-14.

Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's subjective testimony must be clear and convincing. *Burch*, 400 F.3d at 680 (9th Cir. 2005). The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.*; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Examples of clear and convincing reasons include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies either in the claimant's testimony or between his testimony and his conduct, daily activities inconsistent with the alleged symptoms, a sparse work history, testimony that is vague or less than candid, and testimony from physicians and third parties about the nature, severity and effect of the alleged symptoms complained. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ found that plaintiff was not as limited as he alleged and cited numerous reasons for this determination. Tr. 19-23. First, the ALJ found that plaintiff's testimony regarding unemployment benefits hurt his credibility. Tr. 19. Plaintiff argues that only holding himself out as available for full-time work is inconsistent with his disability allegation and that the record "does not establish whether [he] held himself out as available for full-time or part-time work." *See Carmickle v. Commr., Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008); Pl.'s Br. 12. Here, the ALJ did not discredit plaintiff's testimony because of his receipt of unemployment benefits; the ALJ specifically noted that receipt of unemployment benefits does not itself preclude the receipt of Social Security disability benefits, but is a factor that must be considered in the disability determination of plaintiff. Tr. 19, 20 C.F.R. §§ 404.1512(b), 416.912(b). The ALJ found that plaintiff's ability to engage in job search activities and report those activities

showed "greater cognitive skills than alleged." Tr. 19. Further, in determining credibility, "an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony." *Burch*, 400 F.3d at 680 (9th Cir. 2005). The ALJ noted that plaintiff initially testified that he had not sought work since his alleged onset date, but later admitted to searching for work. Tr. 19. The ALJ found that plaintiff's statements "diminishe[d] his credibility" and "suggested he was trying to present himself as more limited." Tr. 19. These findings of the ALJ are supported by the record.

Second, the ALJ found plaintiff's complaints concerning his pain and limitations were not fully credible because the degree of limitation was not consistent with the objective medical evidence. Tr. 19. Plaintiff reported that due to his right shoulder fracture and subsequent procedures, "he drops things," "cannot feel things," and "has a hard time holding a steering wheel, keys, or a cup of coffee." Tr. 18. However, the ALJ found that after procedures and treatment were done in 2010, medical reports from 2011 noted that plaintiff had "very little pain," and that he continued activities like logging and working in the car repair business. Tr.19. The ALJ also found there was no further evidence of medical treatment for plaintiff's right shoulder since the alleged onset date. Tr. 19 (citing Tr. 289, 294, 301-02, 325, 327-28).

Additionally, the ALJ found plaintiff's testimony not credible because plaintiff's statements concerning his limitations due to his shoulder were contradicted by the opinion of Dr. Andrea Marshall. Plaintiff was seen by Andrea Marshall, D.O. in April 2013, who reviewed plaintiff's medical records, interviewed plaintiff, and conducted a physical examination. Dr. Marshall found that plaintiff had "a decreased range of motion of his right shoulder" and right elbow, yet "maintained full 5/5 strength in all extremities, and grip strength was 5/5 bilaterally." Tr. 19, 381-85. Dr. Marshall also found plaintiff could "lift/carry ten pounds occasionally and

frequently because of the right upper extremity." Tr. 19, 385. The ALJ gave "significant weight" to much of Dr. Marshall's opinion and found that her findings were "consistent with limiting the [plaintiff's] ability to lift/carry on the right." Tr. 20. However, the ALJ found that plaintiff could "grip, hold, and manipulate objects without difficulty," "maintained full 5/5 grip strength," and retained sensation in his right upper extremity, which did not "support the degree of limitation alleged." Tr. 19-20. Further, the ALJ noted that he "generously considered" the plaintiff's right shoulder impairment in his physical RFC finding. Tr. 20. The ALJ's findings are supported by the record.

Finally, the ALJ found plaintiff's claims of a severe mental impairment were not supported by the objective medical evidence to the degree alleged. Tr. 20. Plaintiff reported a "limited ability to work because of his progressive bipolar disorder" and that he was not receiving treatment for his mental health, yet tried to get mental health help but was denied. Tr. 18, 184. Plaintiff claimed that his condition, "caused problems with his energy, depression, extreme anger, and he was worried he may 'snap' in the presence of others." Tr. 18, 204. Plaintiff further noted that his progressive bipolar disorder "affected his social and mental capabilities, and his sociopathic behavior diminished his ability to function with/around others." Tr. 18, 222. However, the ALJ found that plaintiff had "a long history of taking mental health medication," was "largely stable on his medications for many years prior to his alleged onset date," and had "worked for many years with his mental health condition." Tr. 20, 354-58. Additionally, in August 2012, the ALJ noted that plaintiff returned to his psychiatric medication prescriber who conducted a mental status examination and described him as having "good grooming, normal alertness, good eye contact, normal motor functioning, normal but pressured speech, and logical thought associations." Tr. 20, 347.

Overall, the ALJ determined that plaintiff's mental health condition was "longstanding, yet he has demonstrated the ability to work in the past despite his condition, and he has a good work history." Tr. 21. The ALJ specifically found that plaintiff's increased symptoms were based on "situational stressors," plaintiff's conditions "never interfered with his ability to work in the past," and "his condition was largely amenable to treatment." Tr. 21. The ALJ noted plaintiff could engage in a range of daily activities, could complete chores, and was able to prepare meals, drive, take the bus, shop, and visit friends once a week. Tr. 21, 204-11, 391. The ALJ recognized that these activities have become limited now that plaintiff lives in his car, but overall found that plaintiff could "live independently" prior to that. Tr. 21. Additionally, the ALJ found "no evidence that claimant followed up with his treating mental health provider until September 2013," and that plaintiff was "not being compliant with his medications or follow-up appointments." Tr. 21, 394-96. The record supports these findings made by the ALJ.

The ALJ also found plaintiff's testimony not credible because plaintiff's statements regarding his mental health were contradicted by the opinion of Dr. Gregory Cole and Dr. Bill Hennings. Plaintiff was seen by Dr. Cole in June 2013, who determined that plaintiff "could benefit from mental health services" and had "some problems in the areas of attention and concentration, slightly below average immediate memory capability, his delayed memory was average, and he could sustain simple routine tasks with only mild problems completing a simple multiple step task." Tr. 20-21, 386-392. The ALJ found that Dr. Cole "vaguely stated that if the claimant pursued work, his emotional instability, problems interacting with others/anger management difficulties/levels of agitation, level of anxiety and claimed pain problems would be primary factors to impact his vocational success." Tr. 21. The ALJ gave some weight to Dr. Cole's opinion, finding that the "opinion of functioning is vague," but specifically noted that Dr.

Cole "does not state the claimant would be unable to work due to his mental condition." Tr. 21. The ALJ also noted that the plaintiff's RFC analysis took into consideration the plaintiff's "cognitive and social limitations due to this mental impairment." Tr. 21. Dr. Bill Hennings conducted a mental RFC review in December 2013 and opined that plaintiff had "difficulties with some but not all concentration and memory tasks" and "was limited to carrying out very short and simple instructions that involve limited minimal public and occasional coworker contact on a sustained basis. Tr. 22. The ALJ gave significant weight to Dr. Hennings' opinion, because it was based on a review of "all of the [plaintiff]'s medical records available at the time." Tr. 22, 89-104. The ALJ noted that there is "no medical opinion from a treating provider that the claimant is unable to perform basic work activities." Tr. 22. Additionally, the ALJ determined that while plaintiff "reported significant difficulties interacting with others, he interacted appropriately with examiners." Tr. 22. This evidence directly contradicted plaintiff's claims that his "sociopathic behavior diminished his ability to function with others," and was fully supported by the record. Tr. 18, 222.

Here, the ALJ provided numerous clear and convincing reasons, supported by substantial evidence, for discrediting plaintiff's testimony. I find the ALJ properly cited inconsistencies in plaintiff's testimony, conduct, and medical records, to support his reasons for discrediting plaintiff's testimony. While variable interpretations of this evidence may exist, the ALJ's analysis was reasonable, such that it must be upheld. *Batson*, 359 F.3d at 1198 (9th Cir. 2004). Therefore, I find the ALJ properly discredited plaintiff's testimony.

B.    Failure to Credit Lay Testimony

Next, Plaintiff argues that the ALJ erred by failing to credit the lay testimony of Ms. Shawna Solmi, plaintiff's former wife. Pl.'s Br. 14-15. Specifically, plaintiff argues that the

ALJ erred in finding that Ms. Solmi's report failed to support greater limitations with respect to plaintiff's ability to engage in activities of daily living, and his ability to respond appropriately to supervision. Pl.'s Br. 15.

Lay testimony as to a plaintiff's symptoms is competent evidence which the ALJ must take into account. *Tobeler v. Colvin*, 749 F.3d 830, 832-34 (9th Cir. 2014), *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). If the ALJ disregards such testimony, the ALJ "must give reasons that are germane to each witness." *Id.* See also *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). Inconsistency with medical evidence is one such reason. *Id.*

Ms. Solmi reported that plaintiff "could not get along with others," "could not handle stress or responsibilities," and "was in constant pain form [sic] his ankles to his shoulders." Tr. 23. She also reported,

> he had no problems taking care of his own personal care. He could prepare small meals, and do laundry, but he did need reminders. She reported his pain and medication affected his ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs, see, remember, complete tasks, concentrate, use hands, and get along with others. Tr. 23, 212-19.

Here, the ALJ gave "some weight" to Ms. Solmi's testimony, but noted that while it "support[ed] the overall record that the [plaintiff] has some physical and mental limitations, it fail[ed] to support any limitations on functional capacity greater than that accounted for" in his RFC calculation. Tr. 23. Specifically, the ALJ noted that plaintiff was able to "engage in a range of activities" independent of Ms. Solmi, and that he was "only taking over the counter medications." Tr. 23. The ALJ found that these actions showed plaintiff was "limited to simple tasks, limited contact with others, and work at a less than light exertional level." Tr. 23. The ALJ also found that Ms. Solmi's reports that plaintiff suffered from "constant pain" were not consistent with the "objective medical evidence that show no treatment since his alleged onset

date." Tr. 23. For these reasons, the ALJ noted, "Ms. Solmi's report is not persuasive that the [plaintiff] could not work within the residual functional capacity finding." Tr. 23.

I find no error in the ALJ's evaluation of Ms. Solmi's testimony. An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. *Lewis v Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). Here, the ALJ commented on Ms. Solmi's testimony giving it some weight, but noted its inconsistencies with medical evidence. This was a germane reason for discrediting Ms. Solmi's testimony, and therefore was proper.

C.    Plaintiff's Ability to Perform Work in the National Economy

Finally, plaintiff argues that the Commissioner failed to meet her burden of proving that he retains the capacity to perform "other work" in the national economy. Pl.'s Br. 16. Specifically, plaintiff argues that: (1) the ALJ did not explain the inconsistency between the VE's testimony and the Dictionary of Occupational Titles (DOT); (2) the ALJ should have found plaintiff disabled based on Medical-Vocational Rule 201.14; and (3) the ALJ should have discussed plaintiff's limitations with respect to his ability to respond to supervision as discussed by Dr. Cole. Pl.'s Br. 16-17.

When a VE provides information about the requirements of an occupation, the ALJ has an affirmative duty to determine whether the information conflicts with the DOT and to obtain an explanation for the apparent conflict. *Massachi v. Astrue,* 486 F.3d 1149, 1152-53 (9th Cir. 2007). The ALJ must resolve the conflict, and make findings about how the conflict is resolved, before relying on the testimony to find that a claimant is not disabled. SSR 00-4p, 2000 WL 1898704 (S.S.A.). The ALJ may rely on testimony from the VE that contradicts the DOT, but only if the record contains persuasive evidence to support the deviation. *Johnson v. Shalala,* 60 F.3d 1428, 1435 (9th Cir. 1995).

Here, the VE identified several jobs the DOT categorizes as light work. Tr. 64-66. The VE testified that these jobs could be performed below the light level because of changes in technology. Tr. 66-69. The ALJ accepted the jobs identified by the VE in making his Step 5 finding. Tr. 24-25. In doing so, plaintiff argues that the jobs identified by the VE were performed at the sedentary, not light level. Pl.'s Br. 16. Therefore, plaintiff argues that the ALJ failed to acknowledge the difference between the VE's testimony and the DOT, and improperly relied on the VE's testimony to find that jobs existed in the national economy at the light level, which plaintiff could perform. Pl.'s Br. 17. Defendant concedes that the ALJ did not properly note the difference between the VE's testimony and the DOT for any of the jobs described. Def.'s Br. 11, Tr. 12-25. However, defendant argues that the ALJ's failure to address this difference should be treated as harmless error. Def.'s Br. 11. An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

I agree that the ALJ's error is harmless because allowing the ALJ to explain the inconsistency between the VE's testimony and the DOT would not change the overall determination that plaintiff could perform other jobs in the national economy. When determining harmless error one must "look at the record as a whole to determine whether the error alters the outcome of the case." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Here, the ALJ determined, using VE testimony, that plaintiff could perform the jobs identified by both the DOT as light and the VE as light, though with additional limitations. Tr. 24-25. Given the ALJ's findings that plaintiff can perform light work, remanding the case for the ALJ to address the difference between the DOT and the VE's testimony would not change this overall determination.

13 – OPINION AND ORDER

Next, plaintiff argues that the ALJ should have found him disabled based on the Medical-Vocational Guidelines. Pl's Br. 16-17. Specifically, plaintiff argues that the ALJ failed to "quantify any jobs that are actually performed at the light level," because the VE's testimony found that the jobs identified are now generally performed at the sedentary level. Pl.'s Br. 17. Plaintiff argues because he is only able to perform work at the sedentary level the VE failed to identify transferable skills, and he should be found presumptively disabled under Medical-Vocational Rule 201.14. Pl.'s Br. 17.

The Medical-Vocational Guidelines, also known as "the grids," are a matrix addressing exertional impairments. 20 C.F.R. Part 404, Subpt. P, App. 2. The grids correlate a claimant's age, education, previous work experience, and RFC to direct a finding of either disabled or not disabled. The grids can only be used when they "completely and accurately represent a claimant's limitations." *Tackett v. Apfel,* 180 F.3d 1094, 1101 (9th Cir. 1999). "When the grids do not match the claimant's qualifications, the ALJ can either (1) use the grids as a framework and make a determination of what work exists that the claimant can perform, see Soc. Sec. Ruling 83–14, 1983 WL 31254 (S.S.A.), or (2) rely on a vocational expert when the claimant has significant non-exertional limitations." *Hoopai v. Astrue,* 499 F.3d 1071, 1075 (9th Cir. 2007) (citing *Desrosiers v. Sec'y of Health and Hum. Svcs.,* 846 F.2d 573, 577 (9th Cir.1988)). Although an ALJ must apply the grids if a claimant suffers from an exertional impairment, where a claimant suffers from both exertional and nonexertional impairments, the grids serve as a framework. 20 C.F.R. pt. 404, Subpt. P, App 2, §§ 200.00(a), (e). In that case, if exertional impairments alone do not direct a finding of disability, further evidence and testimony is required. *Cooper v. Sullivan,* 880 F.2d 1152, 1155-56 (9th Cir. 1989).

Medical-Vocational Rule 201.14 applies only if a plaintiff is limited to sedentary work. Here, the ALJ did not find that plaintiff could perform work only at the sedentary level, but instead found that plaintiff could perform light work with "additional limitations." Tr. 24. The ALJ then elicited testimony from the VE regarding whether jobs existed in the national economy for an individual with plaintiff's age, education, work experience, and RFC. Tr. 24. The ALJ found that plaintiff could perform jobs identified within the category of the light level impeded by additional limitations, notwithstanding the VE's explanation that jobs historically considered light now have a sedentary component. Tr. 24.

I find no error in the ALJ's decision to not rely on the Medical-Vocational Guidelines when determining whether plaintiff was disabled. Here, the ALJ did not limit the plaintiff to sedentary level work such that the Medical-Vocational Rule 201.14 should apply. Instead, the ALJ determined plaintiff could not perform the full range of light work and therefore, properly relied on testimony of the VE to determine whether jobs existed in the national economy for an individual with the plaintiff's "age, education, work experience and residual functional capacity." Tr. 24. I find no error.

Finally, plaintiff argues that the ALJ failed to discuss plaintiff's limitations in responding to supervision given the work limitations of emotional instability and problems interacting with others discussed by Dr. Cole. Pl's Br. 17. Plaintiff argues although the ALJ limited him to "no more than occasional interactions with co-workers, and no contact with the general public," he failed to include limitations related to his "ability to respond appropriately to supervision." Pl's Br. 17.

As discussed above, the ALJ evaluated testimony from Dr. Cole in plaintiff's RFC analysis and noted that Dr. Cole "vaguely stated that if the claimant pursued work, his emotional

instability, problems interacting with others/anger management difficulties/levels of agitation, level of anxiety and claimed pain problems would be primary factors to impact his vocational success." Tr. 21. The ALJ found Dr. Cole did not specifically state that plaintiff would be unable to work because of his mental condition, and further noted that plaintiff's "cognitive and social limitations due to this mental impairment" had been accounted for in the RFC. Tr. 24. These findings are supported by the record and entitled to deference.

For these reasons, I find the Commissioner has met her burden of proving plaintiff retains the capacity to perform "other work" in the national economy.

## CONCLUSION

The ALJ's finding that plaintiff was not disabled under the Act is supported by substantial evidence in the record. Accordingly, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Dated this _12th_ day of March 2016.

_____
Ann Aiken
United States District Judge